## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Joseph Sykes,                                       Case No. 19-cv-2154 (NEB/ECW)

        Plaintiff,

    v.                                          **REPORT AND RECOMMENDATION**

Harold John Klemp and Eckankar,

        Defendants.

---

This matter is before the Court on Defendant Harold John Klemp's ("Klemp") and Eckankar's ("Eckankar") (collectively, "Defendants") Motion to Dismiss, for an Injunction, and for Sanctions (Dkt. 12) and Plaintiff Joseph Sykes's ("Sykes" or "Plaintiff") Motion of Plaintiff for Leave to File a Surreply to Defendants' Reply Memorandum (Dkt. 38). The case has been referred to the undersigned United States Magistrate Judge for a report and recommendation on the Motion to Dismiss, for an Injunction, and for Sanctions ("Motion to Dismiss and for Sanctions") pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons discussed below, the Court recommends granting in part and denying in part Defendants' Motion to Dismiss and for Sanctions and denying Plaintiff's Motion for Leave to File Surreply.

### I.    BACKGROUND

#### A.    Factual Background

Sykes, who is *pro se*, is a citizen of the United Kingdom. (Dkt. 1 ¶ 7.) Klemp is the current leader of Eckankar, which is a nonprofit religious organization registered in

Minnesota and California and headquartered in Chanhassen, Minnesota.  (*Id.*)  Sykes was a member of Eckankar from approximately January 1980 to April 1993.  (Dkt. 1 ¶ 7.1.)  While Sykes refers to himself as a "legal practitioner" (*Id.* ¶¶ 13.36, 15.14), he was disbarred in 2003 due to "various charges of professional misconduct and inadequate professional service."  (Dkt. 15-1, Ex. F at 30.)[1]

Sykes filed two prior civil lawsuits against Defendants in this District in 1997 and 1998.  *See Joseph Noel Sykes v. Douglas Scott Kunin, Harold Klemp, and Eckankar*, Court File No. 97-cv-01222 (ADM/AJB) (D. Minn. April 1, 1998) ("*Sykes I*"); *Joseph Sykes v. Eckankar, Board of Trustees of Eckankar, Harold Klemp, et at.*, Court File No. 98-cv-01490 (ADM/AJB) (D. Minn. Sept. 16, 1998) ("*Sykes II*").

In *Sykes I*, Sykes alleged claims of malicious prosecution, defamation, intentional infliction of emotional distress, negligent infliction of emotional distress, and breach of trust and/or fiduciary duty.  (Dkt. 15-1, Ex. A at 5-10.)  Sykes's claim for intentional infliction of emotional distress was based on the allegation that "Defendant Klemp harmed him emotionally through telepathy and 'mind to mind' communication."  (*Id.* at 7.)  On March 31, 1998, U.S. District Judge Ann D. Montgomery dismissed Sykes's complaint with prejudice.  (*Id.* at 10.)  In particular, she dismissed the intentional infliction of emotional distress claim because it was barred by the statute of limitations.  (*Id.* at 8.)

In *Sykes II*, Sykes alleged claims of breach of trust, breach of contract, and gross negligence.  (*Id.*, Ex. B at 13.)  Judge Montgomery noted the "factual parallels" between

---

[1]    All page numbers refer to the CM/ECF pagination unless otherwise indicated.

*Sykes I* and *Sykes II*, which both focused on allegations that Sykes suffered harm as a consequence of Defendants' alleged "mind to mind communication." (*Id.*) In particular, Judge Montgomery found that "[t]he factual allegations in the [second lawsuit] involve what Plaintiff calls 'soul travel'" but that most of the allegations were "no different than the allegations of 'mind-to-mind communication' in the [first lawsuit]." (*Id.* at 15.) Consequently, Judge Montgomery dismissed Sykes's complaint with prejudice, finding that Sykes's claims were barred by the doctrine of res judicata. (*Id.* at 15-16 ("Plaintiffs present Complaint is a transparent attempt to relitigate issues already resolved by this Court.").) In addition, Judge Montgomery issued the following injunction restraining Sykes from filing certain actions against Defendants:

> Pursuant to Defendants' motion, the Plaintiff, his agents, servants, employees, attorneys, and those in active concert with him, are hereby restrained and enjoined from filing or serving, without first obtaining leave of this Court, any complaint, claim, or other request for relief in any state or federal district court in the United States against Defendant Eckankar, or those in privity with Eckankar, that is based on any of the following causes of action or theories of legal harm: malicious prosecution, **negligent or intentional infliction of emotional distress**, defamation, negligent or intentional breach of fiduciary duty, negligent or intentional breach of trust or charitable trust, clergy or religious malpractice, **and any other claims that were or could have been brought in this case or in Plaintiffs prior case against many of the same Defendants** (Civ. No. 97-1222 ADM/AJB).

(*Id.* (emphases added).)

Sykes appealed both judgments to the Eighth Circuit Court of Appeals, which ultimately affirmed the judgments of this District. (*Id.*, Ex. C at 18-19 and Ex. D at 21-22.) As to the injunction in *Sykes II*, the Eighth Circuit concluded that "the district court did not exceed its authority in the sanction it imposed, because the order was

appropriately tailored and not unwarranted in light of Sykes's prior litigation" and affirmed Judge Montgomery's decision to enter the injunction.  (*Id.* at 22.)

## B.   Procedural Background

On August 7, 2019, Sykes filed his Complaint (Dkt. 1) along with a self-styled document entitled "Memorandum of Law in Support of the Plaintiff's Complaint" ("Brief in Support of Complaint") (Dkt. 2).  In his Complaint, Sykes alleges that between approximately 2017 through 2019, Defendants "did inflict on the Plaintiff intentionally and/or recklessly and/or negligently severe emotional distress . . . in a series of incidents of assault on his mind and emotions using techniques of thought control . . . ."  (Dkt. 1 ¶ 8.)  Sykes seeks the following damages: before April 1, 2018, $500,000 each day between 8:00 a.m. and 11:00 p.m. and $1 million for each night between 11:00 p.m. and 8:00 a.m. in which the Defendants are found to have caused him emotional distress; from April 1, 2018, $1 million for each day between 8:00 a.m. and 11:00 p.m. and $5 million for each night between 11:00 p.m. and 8:00 a.m.; and putative damages in the amount of $1 billion.  (*Id.* at 68.)

On October 2, 2019, Defendants moved to dismiss Sykes's Complaint with prejudice as frivolous and for failing to state a claim upon which relief can be granted.  (Dkt. 12.)  In addition, Defendants moved for a permanent injunction under 28 U.S.C. § 1651 and Federal Rule of Civil Procedure 65 "restraining Plaintiff from commencing future actions against Defendants, designating him as a restricted filer, and directing the Clerk of Court to reject all future filings by him against Defendants unless he is represented by legal counsel or obtains the Court's prior approval . . . ."  (*Id.* at 1-2.)

Lastly, Defendants moved for sanctions against Sykes in the form of reasonable costs and attorneys' fees incurred in defending against the Complaint. (*Id.* at 2.) Sykes filed a response signed October 23, 2019 and docketed on October 25, 2019 (Dkt. 24) and Defendants filed their reply on November 7, 2019 (Dkt. 27).

On December 8, 2019, Sykes filed a self-styled motion entitled "Motion for Leave to File his Surreply against the Defendants' Reply Memorandum for breach of LR 7.1(c)(3)(B)." (Dkt. 32-1.) On December 9, 2019, the Court found that Sykes's motion was procedurally improper and violated Local Rules and thus, ordered the motion stricken from the docket. (Dkt. 34.)

On March 25, 2019, Sykes moved to file a surreply to Defendants' reply memorandum in support of their motion to dismiss (Dkt. 38), and Defendants filed their response on March 27, 2019 (Dkt. 41).

## C.     The Complaint

In his third and present Complaint against Defendants, Sykes alleges a series of "telepathic" torts that occurred between approximately June 2017 and July 2019, which resulted in Sykes suffering severe emotional distress. (Dkt. 1 ¶¶ 12.1-17.51.)[2] In particular, the Complaint alleges causes of action for (1) intentional infliction of emotional distress; (2) negligent infliction of emotional distress; and (3) assault. (*Id.* ¶ 8; *see also* Dkt. 2 ¶ 2 ("Plaintiff sues the Defendants for declarations and damages for injuries caused him pursuant to the common law torts of intentional, reckless, or

---

[2]     Sykes indicates that the incidents cited in the Complaint began in June 2017, however, he considers the acts that occurred before August 1, 2017 "background acts subject to extension of time." (Dkt. 2 ¶ 2.1 n.1.)

negligent infliction of severe emotional distress, further and alternatively the common law tort of assault.").)

Defendants' purported "telepathic influence" over Sykes occurred through what Sykes generally refers to as "soul travel," "remote thought control," or "telepathic techniques." (*Id.*) According to Sykes, "[t]he key characteristics of the said intentional or negligent infliction of severe emotional distress or assaults were the use of thought control or telepathic techniques to communicate with, and to assault, the mind and emotions of the Plaintiff . . . without his consent." (Dkt. 1 ¶ 9.1.)

In his Brief in Support of Complaint, Sykes explains the parallels, in his view, between "soul travel" and "thought control":

> In this case, the facts alleged in the Complaint make it plausible to infer liability because they are distant relatives of the experiences the Defendants claim in its official theology and practice. While the Defendants' religious practices, such 'soul travel communication between First Defendant and Second Defendant members, are consensual and purportedly positive, and the Plaintiff s allegations are of non-consensual, nightmarish and tormenting experiences, **both versions rely on advanced thought control by the First Defendant or the member or leaver. 'Soul travel' communication is readily interpreted as thought control**.

(Dkt. 2 ¶ 12.2.5 (emphasis added).)

Sykes admits that the alleged assault "was not physical" but rather effected by a "residual telepathic influence" arising from his prior membership with Eckankar and its "thought control techniques." (*Id.* ¶ 12.1.2.)

In the Complaint, Sykes provides a detailed summary of the alleged incidents and includes information such as the date, time, and location of the incident and who was present with Sykes during the incident. (Dkt. 1 ¶¶ 12.1-17.51.) Many of the allegations

involve Klemp "projecting his persona at [Sykes] from Minnesota," causing Sykes pain or preventing him from sleeping.  (Dkt. 1 ¶ 12.10; *id.* ¶ 15.6 ("Mr. Klemp projected an image of himself onto the Plaintiff's back and hit him repeatedly.").)  According to Sykes, Klemp's "projections" could be categorized as follows: "(1) pure thought, entering the mind, creating disturbing sensations, or sheer violent power hitting the senses; or (2) quasi physical thought entities, always violent and often terrifying, including the animal cloaks, thick hoods, creatures strapped on the Plaintiff's sides and back, among others."  (*Id.* ¶ 16.3.1.)

For context, the Court provides a sample of the "projections" alleged in the Complaint:

- "Plaintiff removed entities on the back of his neck, including a needle sticking into his neck, onto which violent thought was directed, like sticking an electric needle into his neck";

- "Violent, synthetic little insect-type entities were stabbing [Sykes] and clinging at the same place";

- "Mr. Klemp put an animal cloak hard on his back";

- "Mr. Klemp appeared in front of the Plaintiff and appeared to stick pieces of hard grey material into the area immediately in front of his heart"; and

- "Mr. Klemp was in the room, projecting creatures at the Plaintiff's head and back."

(*Id.* ¶¶ 15.5.2, 15.12, 16.2, 17.2, 17.7.)

The Court categorizes Sykes's claims as follows: (1) intentional infliction of emotional distress; (2) negligent infliction of emotional distress; and (3) assault.

## II.    LEGAL STANDARD

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the pleadings are construed in the light most favorable to the non-moving party, and the facts alleged in the complaint must be taken as true.  *See Ashley County, Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009).  In addition, a court must afford the plaintiff all reasonable inferences from those allegations.  *See Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010).  At the same time, to withstand a motion to dismiss under Rule 12(b)(6), litigants must properly plead their claims under Federal Rule of Civil Procedure 8 and meet the principles articulated by the United States Supreme Court in *Iqbal* and *Twombly*.

Under Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The pleading standard articulated by Rule 8 "does not require detailed factual allegations, but it [does demand] more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted).  A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Thus, to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (quoting

*Twombly*, 550 U.S. at 556). "[T]he plausibility standard, which requires a federal court complaint to state a claim for relief that is plausible on its face, . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Ritchie v. St. Louis Jewish Light*, 630 F.3d 713, 717 (8th Cir. 2011) (internal quotation and citation omitted). "Determining whether a complaint states a plausible claim for relief will, . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted).

Following *Twombly* and consistent with *Iqbal*, the Eighth Circuit explained:

> While a plaintiff need not set forth "detailed factual allegations," *Twombly*, 127 S. Ct. at 1964, or "specific facts" that describe the evidence to be presented, *Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007) (per curiam), the complaint must include sufficient factual allegations to provide the grounds on which the claim rests. *Twombly*, 127 S. Ct. at 1965 n. 3. A district court, therefore, is not required "to divine the litigant's intent and create claims that are not clearly raised," *Bediako*, 354 F.3d at 840, and it need not "conjure up unpled allegations" to save a complaint. *Rios v. City of Del Rio*, 444 F.3d 417, 421 (5th Cir. 2006) (internal quotation omitted).

*Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009). The Eighth Circuit has interpreted the "face" of the complaint as including public records and materials embraced by the complaint as well as materials attached to the complaint. *C.H. Robinson Worldwide, Inc. v. Lobrano*, 695 F.3d 758, 764 (8th Cir. 2012); *see also Stahl*, 327 F.3d at 700 (citing *Faibisch*, 304 F.3d at 802-03).

Finally, *pro se* complaints are to be construed liberally, but they still must allege sufficient facts to support the claims advanced. *See Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004).

### III.    DEFENDANTS' MOTION TO DISMISS

Defendants move this Court to dismiss the claims against them for the following reasons: (1) Sykes's claims are frivolous; (2) Sykes's claims are barred by the doctrine of collateral estoppel; (3) Sykes fails to plead any factual allegations that would support the essential elements of causes of action for negligent and/or intentional infliction of emotional distress or assault; and (4) Sykes's claims, to the extent the alleged underlying facts occurred before August 7, 2017, are barred by the statute of limitations.  (Dkt. 14 at 6, 10.)  Defendants also move for an injunction and sanctions.  (Dkt. 14 at 20-28.)  The Court addresses each argument below.

### A.    Frivolousness

Defendants argue that the Complaint is frivolous, and that the Court should dismiss Sykes's claims with prejudice because they are "not susceptible to proof, either of causation or any other element of a cause of action."  (Dkt. 14 at 9-10.)  In support of their argument, Defendants cite to several cases where district courts have dismissed similar claims of telepathy as frivolous.  (*Id.* at 8-9.)  In response, Sykes argues there is no basis for dismissing his claims and that Defendants fail to explain why the Complaint is frivolous.  (Dkt. 24 ¶¶ 2.3, 2.4.)  Additionally, Sykes argues that the facts in this case are distinguishable from the cases Defendants cited because this case involves a "long, involved relationship between the parties."  (Dkt. 24 ¶ 2.5.)  In their reply, Defendants counter that Sykes does not contest the Court's inherent authority to dismiss frivolous claims with prejudice and that the dismissals in the holdings from the cases they cite are

not based on the relationship between parties but rather the nature of the allegations. (Dkt. 27 at 3-4.)

Whether a complaint should be dismissed as frivolous more often arises in the context of *in forma pauperis* litigation pursuant to the applicable statute. *See* 28 U.S.C. § 1915(e)(2)(B)(i) (authorizing dismissal of case proceeding *in forma pauperis* "at any time if the court determines that . . . the action or appeal . . . is frivolous or malicious"). Here, Sykes paid the full filing fee for this action. Nevertheless, "there is little doubt" that federal courts have the power to dismiss frivolous actions even when a plaintiff has paid the full filing fee and is not proceeding *in forma pauperis*. *See Mallard v. U.S. Dist. Court*, 490 U.S. 296, 307-08 (1989) ("Section 1915(d), for example, authorizes courts to dismiss a 'frivolous or malicious' action, but there is little doubt they would have the power to do so even in the absence of this statutory provision.").[3] An action is frivolous if it lacks "an arguable basis either in law or in fact"—if it is based on an "indisputably meritless legal theory" or factual allegations that are so "fanciful," "fantastic," or "delusional" as to be "clearly baseless." *Neitzke v. Williams*, 490 U.S. 319, 325, 327-28 (1989).

Here, Sykes alleges three causes of action: (1) intentional infliction of emotional distress; (2) negligent infliction of emotional distress; and (3) assault. (Dkt. 1 ¶ 8; Dkt. 2 ¶ 2.) It is undisputed that Sykes' claims are based on the theory that Defendants harmed Sykes using "telepathic techniques," "remote thought control," and "soul travel." (*See,*

---

[3]    28 U.S.C. § 1915(d) was re-designated as § 1915(e) in 1996. *See* 28 U.S.C. § 1915, 1996 Historical and Revision Notes.

*e.g.*, Dkt. 1 ¶ 9.1 ("key characteristics" of the claims "were the use of thought control or telepathic techniques to communicate with, and to assault, the mind and emotions of the Plaintiff"); *id.* ¶ 12.1.2 ("The assault was not physical, but effected by [Klemp's] residual telepathic influence over the Plaintiff"); *id.* ¶ 13.11.1 ("The violent cultist was Harold John Klemp. The attack creature was a thought-created entity. Klemp routinely used thought-created entities to attack the Plaintiff."); *id.* ¶ 17.25 ("For the avoidance of doubt, this was not a physical sword, and the Plaintiff did not remove it with a physical hand. The sword was a complex thought [and] [t]he Plaintiff removed it by his own power of thought.")."

According to Sykes:

> The Plaintiff's Complaint discloses a series of particularised incidents of intentional and/or negligent infliction of severe emotional distress, alternatively assault. Substantively, **these consist of remote attacks by the Defendants on the Plaintiff's mind** deploying sophisticated thought control (or thought reform telepathic techniques so as to cause him emotional and psychological (and physical effects).

> **The said attacks involved [Klemp] appearing by remote thought or telepathic projection at the Plaintiff** in a variety of places including his bedroom, office, hotel rooms, and public places.

(Dkt. 24 at ¶¶ 9.9-9.10 (emphases added).)

Sykes further explained, "the claims differ from the majority of tortious claims in that they **do not rely on physical evidence**, as would be available had the Defendants resorted to physical harassment. The evidence **entirely relates to harassing acts perceived through the Plaintiff s emotions and mind**." (Dkt. 2 ¶ 9.1.2 (emphases added).) Indeed, Sykes concedes that the alleged assault claim "was not physical" (Dkt. 1 ¶ 12.1.2) and that "Defendants use harmful **remote person to person communication**

**methods (absent physical or mechanical contact)** . . . ." (Dkt. 2 ¶ 15.8 (emphasis added)).

Sykes' telepathy-based claims are precisely the type of claims that are routinely dismissed by federal courts as frivolous. *See, e.g.*, *Harvey v. Kirk*, No. 619CV411MADATB, 2019 WL 3491264, at *4 (N.D.N.Y. Aug. 1, 2019) (dismissing Plaintiff's claims as frivolous under § 1915(e)(2)(B) because "the basis for all of these claims is that Defendants used individuals with telepathic abilities to mentally survey and harass Plaintiff for years in the hopes of involuntarily enlisting him into a top-secret government program intended to obtain premonitions from religious individuals as a means of predicting the future."); *Bejarano v. Rosenbaum*, No. CV H-18-4720, 2019 WL 414519, at *1 (S.D. Tex. Jan. 31, 2019) (citing *Harris v. Hegmann*, 198 F.3d 153, 156 (5th Cir. 1999) ("Because [Plaintiff's] allegations are so delusional as to be wholly incredible, the court concludes that this case is subject to dismissal as both legally and factually frivolous.); *Stokes v. Stevens*, No. 4:17-CV-1958 JAR, 2018 WL 300450, at *2 (E.D. Mo. Jan. 4, 2018) (dismissing as frivolous Plaintiff's claims involving mind reading, hearing voices, and mind control).

In sum, all of Sykes' claims rely on a factual basis that is so "fanciful," "fantastic," or "delusional" as to be "clearly baseless." *See Neitzke*, 490 U.S. 319 at 327-28. The Court therefore recommends dismissing the Complaint as frivolous.[4]

---

[4]    Defendants also assert that Sykes claims are precluded by the doctrine of collateral estoppel based on the final adjudications in *Sykes I* and *Sykes II*. (Dkt. 14 at 10-14; Dkt. 27 at 5-10.) Collateral estoppel, or issue preclusion, requires (among other things) that the issue sought to be precluded be identical to the issue previously decided. *Irving v. Dormire*, 586 F.3d 645, 647-48 (8th Cir. 2009). "The party asserting collateral estoppel

**B.    Failure to State a Plausible Claim for Relief**

In the alternative, Defendants argue that Sykes's Complaint fails to state a claim for intentional infliction of emotional distress, negligent infliction of emotional distress, and assault. Defendants contend:

> Defendants have found no cases in any federal or state jurisdiction recognizing a cause of action for torts allegedly committed by telepathy or remote thought projection. Courts have universally held that allegations of this kind are frivolous and not susceptible of being proven true or false by any means.

(Dkt. 14 at 15.) Although this argument is really just a different way of asserting that Sykes' claims are frivolous because they are based on telepathy and remote attacks, Defendants made individualized arguments as to each claim, to which Sykes responded. The Court therefore addresses each claim below.

---

has the burden of proving that all four elements apply." *In re Miera*, 926 F.2d 741, 743 (8th Cir. 1991). "To determine whether an issue was actually litigated and was necessary to the decision in the prior action, the court should examine the entire record of the earlier proceeding." *Id.* "The party asserting collateral estoppel has the burden of proving that all four elements apply." *In re Miera*, 926 F.2d 741, 743 (8th Cir. 1991). Sykes contends that issue preclusion does not apply because the events on which the current claims are based occurred between 2017 and 2019, rendering the factual circumstances "entirely different," including because "the heated background of civil and criminal litigation with allegations of harassment . . . is absent." (*See, e.g.*, Dkt. 24 ¶¶ 6.6.1, 6.9.) Defendants, for their part, use a broad brush when characterizing the issue decided in the earlier lawsuits, describing the earlier lawsuits as "presenting the identical issue of law raised in this lawsuit, namely, whether such allegations of telepathic contact could ever sustain any legal claims." (Dkt. 14 at 11.) "Although the idea of issue preclusion is straightforward, it can be challenging to implement." *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 148 (2015). Here, the Court does not need to reach the question of issue preclusion because the frivolity of the claims asserted in the Complaint provides ample grounds to recommend dismissal.

### 1.    Intentional Infliction of Emotional Distress

As in *Sykes I* and *Sykes II*, Sykes asserts a claim for intentional infliction of emotional distress.  (Dkt. 1 ¶ 8.)  Under Minnesota law, a claim for intentional infliction of emotional distress requires a plaintiff to show that: (1) the defendant's conduct was extreme and outrageous; (2) the conduct was intentional or reckless; (3) it caused emotional distress; and (4) the distress was severe.  *Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428, 438-39 (Minn. 1983).  The defendant's conduct "must be extreme and outrageous, so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community."  *Haagenson v. Nat'l Farmers Union Prop. & Cas. Co.*, 277 N.W.2d 648, 652-53 n. 3 (Minn. 1979) (citation omitted).

Defendants contend this claim fails for two reasons.  First, Sykes' claim is "based exclusively upon subjective experiences not susceptible to being proven true or false by legally recognized means" because the alleged conduct is "solely telepathic" and therefore the claims "cannot be objectively considered and would not meet any standard of proof required by the law, much less the high standard of proof required for a claim of intentional infliction of emotional distress."  (Dkt. 14 at 16-17.)  Second, "Plaintiff has not pled any conduct or actions that would establish causation by Defendants."  (*Id.* at 17; Dkt. 27 at 15.)

In his response, Sykes argues that his claim is "supported by plausible factual allegations given the Defendants' published written admissions."  (Dkt. 24 ¶ 13.)  For example, Sykes argues "given there is a strand of similar conduct admitted by the Defendants in certain publications, albeit contrary to their official theology and practice,

15

the similarities would be striking and evident to the jury," such that "the jury will find it highly likely that Defendants did cause the alleged acts." (*Id.* ¶ 10.30.) In other words, Sykes argues that because Defendants' publications describe "soul travel" and "abusive thought control," Defendants cannot argue that his claims fail because telepathy is implausible. (*See, e.g.*, *id.* ¶¶ 10.48-49.)

Sykes also contends that the California Supreme Court decision in *Molko v. Holy Spirit Association*, 46 Cal. 3d 1092 (Cal. 1998), and the District of Columbia Court of Appeals decision in *Kropinski v. World Plan Executive Council*, 853 F.2d 948 (D.C. Cir. 1988), support his argument that his claim is not rendered implausible by its reliance on telepathy. (Dkt. 24 ¶¶ 9.15-9.25.) *Molko* decided whether summary judgment had been properly granted for California state law claims of false imprisonment, fraud, intentional infliction of emotional distress, and restitution. 46 Cal. 3d at 1102. While the case involved allegations of "coercive persuasion," "mind control," and "brainwashing" in the context of "religious recruitment and indoctrination," *id.* at 1108-09, it did not involve claims of telepathy or other paranormal means of control. *Kropinksi* involved allegations of "thought reform," 853 F.2d at 954, but also did not involve telepathy-based claims. For these reasons, these cases do not support the conclusion that Sykes' claims are plausible.

As to Sykes' reliance on Defendants' publications, regardless of whether Defendants themselves believe in "soul travel," telepathy, "remote thought control," "remote attacks," or similar paranormal concepts, as a matter of law, claims based on telepathy are frivolous and certainly do not state a plausible claim for relief—whether

couched as a failure to plausibly state causation in the context of an intentional infliction of emotional distress claim or otherwise. Sykes' intentional infliction of emotional distress claim, which is based solely on telepathic communications, does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Iqbal*, 556 U.S. at 678, and the Court recommends dismissing Sykes's intentional infliction of emotional distress claim under Rule 12(b)(6).[5]

### 2. Negligent Infliction of Emotional Distress Claim

Sykes also asserts a claim for negligent infliction of emotional distress. (Dkt. 1 ¶ 8.) Defendants argue that Sykes's allegations fail to meet the "zone of danger" requirement and fail to establish causation by Defendants. (Dkt. 14 at 18.) In response, Sykes generally "relies on the malicious conduct exception to the zone of danger requirement" to support his argument. (Dkt. 24 ¶ 13.) In their reply, Defendants contend that Sykes's allegations do not allege any cognizable "malicious conduct" that would trigger such an exception. (Dkt. 27 at 14.) The Court agrees with Defendants.

In addition to the elements of negligence, a plaintiff must establish the following three elements to raise a claim for negligent infliction of emotional distress: (1) plaintiff was within the zone of danger of physical impact; (2) plaintiff reasonably feared for her own safety; and (3) plaintiff suffered severe emotional distress with attendant physical

---

[5] The parties also raised First Amendment concerns in their briefing. (*See, e.g.*, Dkt. 24 ¶¶ 10.33-10.58; Dkt. 27 at 16-17.) The Court's decision is based on the frivolous and implausible nature of Sykes's <u>legal</u> claims, and the Court does not make any finding or observation as to Defendants' religious beliefs or theories.

manifestations.  *Engler v. Illinois Farmers Ins. Co.*, 706 N.W.2d 764, 767 (Minn. 2005) (citation omitted).

In addition to the implausibility of Sykes' telepathy-based negligent infliction of emotional distress claim, the Complaint contains no allegations that would satisfy the "zone of danger" requirement.[6]  All of Sykes's claims "do not rely on physical evidence" but rather evidence that "entirely relates to harassing acts perceived through the Plaintiff's emotions and mind."  (Dkt. 2 ¶ 9.1.2.)  Nor has Sykes alleged any alternative facts that would trigger an exception to the "zone of danger" requirement.  *See Soucek v. Banham*, 503 N.W.2d 153, 163 (Minn. Ct. App. 1993) (citation omitted) (describing the exceptions to the "zone of danger" requirement as "a direct invasion of . . . rights, such as defamation, malicious prosecution, or other willful, wanton or malicious conduct.").  Sykes has not plausibly alleged a negligent infliction of emotional distress claim against Defendants.  Accordingly, the Court recommends dismissing Sykes's negligent infliction of emotional distress claim under Rule 12(b)(6).

### 3.    Assault Claim

Finally, Sykes alleges an assault claim against Defendants.  (Dkt. 1 ¶ 8.) According to Defendants, Sykes's assault claim fails because there are no allegations of physical contact or communication between Sykes and Defendants.  (Dkt. 14 at 19-20.)

---

[6]    In *Sykes I*, Judge Montgomery dismissed Sykes's negligent infliction of emotional distress claim, holding that "Plaintiff cannot satisfy, nor has Plaintiff attempted to satisfy, the 'zone of danger' requirement . . . . Moreover, under Minnesota law, 'an underlying intentional tort is not required to plead a cause of action for negligent infliction of emotional distress if physical injury is present.' . . . In this case, Plaintiff has shown neither an underlying intentional tort nor physical injury."  (Dkt. 15-1 at 8 through 9.)

In response, Sykes argues that "he feared assaults including physical assault – on his mind, his emotional state and his physical body and safety – as a result of the 1st Defendant's uses of thought control to cause him to believe he would be so assaulted, was being assaulted or had been assaulted."  (Dkt. 25 ¶ 17.2.)  Additionally, Sykes believes he "had a reasonable apprehension of immediate physical harm from the 1st Defendant when using thought control to project his appearance at and influence the mind of the Plaintiff so as to cause him fear assaults on his person including physical battery, and the acts of interference were on each occasion intentional."  (*Id.* ¶ 17.4.)  In their reply, Defendants counter that Sykes's allegations of "thought control" are insufficient to state a cause of action for assault.  (Dkt. 27 at 14-15.)

> Under Minnesota law:
>
> An assault is an unlawful threat to do bodily harm to another with present ability to carry the threat into effect.  Mere words or threats alone do not constitute assault.  When the words or threats are accompanied by a threat of physical violence under conditions indicating present ability to carry out the threat, they cease to be mere words or threats.  The display of force must be such as to cause plaintiff reasonable apprehension of immediate bodily harm.  Evidence that the party charged exhibited anger, used violent language and threatened to strike another while in his presence under circumstances indicating a present ability to carry out the threats is sufficient to show an assault.

*Dahlin v. Fraser*, 288 N.W. 851, 852 (1939).

Here, Sykes has not alleged any facts demonstrating a threat of physical violence under conditions indicating present ability to carry out the threat.  Rather, the only contact alleged by Sykes was through "projections," "telepathic communications," and the like.  (Dkt. 1 ¶ 7.3 ("Plaintiff received information in his mind by hearing words or sensing a situation projected at him by the First Defendant, that is, by telepathic

communication.").)  Sykes also concedes that the alleged assault "was not physical" but rather caused by "residual telepathic influence" resulting from his membership with Eckankar and its "thought control techniques."  (*Id.* ¶ 12.1.2.)  Accordingly, the Court recommends dismissing Sykes's assault claim under Rule 12(b)(6).[7]

## C.    The Complaint Should Be Dismissed with Prejudice.

Ordinarily the Court would recommend dismissal under Rules 12(b)(1) and 12(b)(6) without prejudice.  *See County of Mille Lacs v. Benjamin*, 361 F.3d 460, 464 (8th Cir. 2004) ("A district court is generally barred from dismissing a case with prejudice if it concludes subject matter jurisdiction is absent."); *Michaelis v. Nebraska State Bar Ass'n*, 717 F.2d 437, 438–39 (8th Cir. 1983) ("Ordinarily dismissal of a [pleading] for failure to comply with Rule 8 should be with leave to amend.").  "Nonetheless, when a complaint is so deficient or defective that the court is convinced that its defects cannot be cured through re-pleading, dismissal with prejudice is appropriate."  *Sellors v. Obama*, Case No. 13-cv-2484 SRN/JSM, 2014 WL 1607747, at *14 (D. Minn. April 15, 2014) (collecting cases).

Sykes's claims here are premised exclusively on "telepathic" torts which resulted in Sykes suffering severe emotional distress.  (*See, e.g.*, Dkt. 1 ¶¶ 12.1-17.51.)  As explained in Section III.A, such "fanciful," "fantastic," and "delusional" allegations are frivolous and have been unequivocally rejected by courts.  The Court is therefore

---

[7]    Defendants also argue that Sykes's claims, to the extent they are based on alleged conduct occurring prior to August 7, 2017, are barred by the statute of limitations.  (Dkt. 14 at 20.)  Because the Court recommends dismissal of all claims as frivolous and under Rule 12(b)(6), the Court does not reach this statute of limitations argument.

convinced that the defects in the Complaint cannot be cured through re-pleading and recommends the Complaint be dismissed with prejudice.

**D.    Defendants' Request for an Injunction and Sanctions**

Finally, Defendants move the Court for a permanent injunction and sanctions under the Court's inherent authority in 28 U.S.C. § 1651 and Federal Rule of Civil Procedure 65.  (Dkt. 12 at 2-3.)  Defendants argue that this Court should bar any future litigation by Sykes against them unless Sykes is represented by legal counsel or obtains prior leave of the Court because of Sykes's "redundant, frivolous litigation against Defendants."  (Dkt. 14 at 20-25.)  Defendants also argue that they are entitled to the fees and costs incurred in bringing their Motion to Dismiss because "Plaintiff's persistence in filing the instant action in defiance of the earlier rulings is a clear and knowing abuse of the judicial process and provides more than ample basis for the sanctions sought . . . ."  (Dkt. 14 at 26.)

"*Pro se* litigants do, of course, have a right of access to the courts.  That right, however, does not ensure an unrestricted opportunity to pursue frivolous, malicious or abusive proceedings."  *Hanson v. Willis*, No. CIV. 14-86 JNE/FLN, 2014 WL 1117531, at *2 (D. Minn. Mar. 20, 2014) (citing *In re Tyler*, 839 F.2d 1290, 1292 (8th Cir. 1988)).  "The Court may, in its discretion, place reasonable restrictions on any litigant who files non-meritorious actions for obviously malicious purposes and who generally abuses judicial process.  These restrictions may be directed to provide limitations or conditions on the filing of future suits."  *In re Tyler*, 839 F.2d at 1293 (citations omitted).

As Defendants note, Judge Montgomery found it necessary to restrict Sykes from filing certain types of lawsuits against Defendants in 1998:

> Pursuant to Defendants' motion, the Plaintiff, his agents, servants, employees, attorneys, and those in active concert with him, are hereby restrained and enjoined from filing or serving, without first obtaining leave of this Court, any complaint, claim, or other request for relief in any state or federal district court in the United States against Defendant Eckankar, or those in privity with Eckankar, that is based on any of the following causes of action or theories of legal harm: malicious prosecution, negligent or intentional infliction of emotional distress, defamation, negligent or intentional breach of fiduciary duty, negligent or intentional breach of trust or charitable trust, clergy or religious malpractice, and any other claims that were or could have been brought in this case or in Plaintiffs prior case against many of the same Defendants (Civ. No. 97-1222 ADM/AJB).

(Dkt. 15-1, Ex. B at 16.)

Defendants assert that "Plaintiff's pleadings spanning twenty years reflect an obsessive motive to attack a religion via the court system, misdirecting blame for his subjective experiences on Defendants via three lawsuits." (Dkt. 14 at 22.) Sykes responds that the last lawsuit he filed against Defendants was 21 years ago, that he checked with the Clerk's Office in 2019 before filing this action to see if he was on a restricted filer's list and was told he was not, and that there is no basis for imposing a filing restriction under these circumstances. (Dkt. 24 ¶¶ 22-24.12.)

The Court has carefully considered whether a filing restriction is appropriate in view of the parties' competing interests. In view of the 21-year duration between Sykes' last lawsuit (filed in 1998) against Defendants, the fact that the current Complaint is based on facts alleged to have occurred between 2017 and 2019, and the fact that Sykes made efforts to determine whether he was permitted to file his Complaint before doing so, the Court does not find Sykes' filing of the instant Complaint to constitute the type of

abusive or malicious litigation that would warrant a filing restriction.  The Court also notes it is not entirely clear that all of Sykes' claims fall within the scope of Judge Montgomery's filing restriction, given that the underlying alleged facts occurred almost 20 years after she entered that restriction.  Finally, while Defendants note the frivolous nature of Sykes' telepathy-based claims, based on the record presented by Defendants, the decision in *Sykes I* was not based on the legally frivolous nature of Sykes' claims in that case.  (*See* Dkt. 15-1, Ex. A.)  Similarly, the dismissal order in *Sykes II*, while referencing the concept of "soul travel," was based on a *res judicata* theory, not frivolity.  (*See* Dkt. 15-1, Ex. 2.)  For these reasons, the Court recommends denial of Defendants' request for an injunction restraining Sykes from commencing any future actions against Defendants unless he is represented by legal counsel or obtains the Court's prior approval, directing the Clerk of Court to reject all future filings by Sykes against Defendants unless the conditions of the new injunction are satisfied, and designating Sykes as a restricted filer in the District of Minnesota.

The Court also considers Defendants' request that the Court sanction Sykes by awarding Defendants their costs and attorneys' fees.  (Dkt. 14 at 25.)  Federal courts have the inherent authority to "fashion an appropriate sanction for conduct which abuses the judicial process."  *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017) (citation and internal quotation marks omitted).  Federal courts may use this inherent power to assess attorney's fees against a party for acting "in bad faith, vexatiously, wantonly, or for oppressive reasons."  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 33 (1991).  Exercise of this inherent authority requires a finding of bad faith and addresses conduct

that constitutes willful abuse of the judicial process or fraud upon the court. *Stevenson v. Union Pac. R. Co.*, 354 F.3d 739, 751 (8th Cir. 2004); *Jaquette v. Black Hawk Cty.*, 710 F.2d 455, 462 (8th Cir. 1983). A court should exercise its inherent power to sanction cautiously and with "restraint and discretion." *Chambers*, 501 U.S. at 44. For the same reasons why the Court does not recommend entry of the injunction requested by Defendants, the Court recommends against awarding Defendants their costs and attorneys' fees incurred in connection with their Motion to Dismiss and for Sanctions. Sykes' conduct in filing the Complaint over 20 years after his last lawsuit against Defendants and based on a different set of alleged facts does not constitute willful abuse of the judicial process or fraud upon the Court.[8]

However, the Court warns Sykes against filing any additional lawsuits against Defendants or their privies based on telepathy, remote attacks, remote thought control, soul travel, mind-to-mind communication, or any similar paranormal theories. Such theories have been soundly rejected by courts. Should Sykes file additional lawsuits or legal claims against Defendants based on any of those theories (regardless of whether their basis is described as telepathy, soul travel, mind-to-mind communication, or some

---

[8]    Defendants argue that Sykes acted in bad faith because he did not inform the Chief U.S. District Judge for the District of Minnesota that the Eighth Circuit had affirmed Judge Montgomery's filing restriction in a letter sent with his Complaint, associated documents, and filing fee. (*See* Dkt. 27 at 20.) The Court does not view this fact as significant given that Sykes' letter (which was publicly filed) does not suggest that the filing restriction had been overturned, stated that Defendants had informed Sykes that he must seek leave of Court due to the filing restriction, and sought guidance as to how to proceed with his lawsuit. (Dkt. 3.)

other term), it is probable that doing so would result in imposition of a filing restriction against Sykes and an award of attorneys' fees and costs to Defendants.

## IV.    PLAINTIFF'S MOTION FOR LEAVE TO FILE SURREPLY

After Defendants' Motion to Dismiss was fully briefed, Sykes filed a Motion for Leave to File Surreply ("Motion for Leave").  (Dkt. 38.)  In his Motion for Leave, Sykes primarily argues that Defendants breached Local Rule 7.1(c)(3)(B).  (Dkt. 39 ¶ 2.)  Citing to specific excerpts from Defendants' reply, Sykes argues that Defendants make allegations not related to his memorandum of law, "as they reply on an excessively inaccurate misconstruction of that document."  (*Id.* ¶ 4.1.)  Defendants argue that Sykes's Motion for Leave should be denied for the following reasons: (1) it fails to show any good cause; (2) the motion is unreasonably late and delays the resolution of Defendants' motions, and (3) there is no cause for a surreply because Defendants' reply brief was responsive to the issues raised by Sykes in his response.  (Dkt. 41 at 1.)

The Motion for Leave is denied for the following reasons.  First, Sykes has had ample opportunity to make his arguments, including in a "Memorandum of Law in Support of the Plaintiff's Complaint" (which is not contemplated by the Federal Rules of Civil Procedure), and additional briefing will not alter the legally frivolous and fundamentally implausible nature of his telepathy-based claims.

Second, the Court finds no violation of Local Rule 7.1(c)(3)(B) and no basis for permitting a surreply.  Minnesota Local Rule 7.1(c)(3)(B) explains that "[a] reply memorandum must not raise new grounds for relief or present matters that do not relate to the opposing party's response."  D. Minn. LR 7.1(c)(3)(B).  Importantly, the Rule

allows arguments in reply memoranda that rebut to the opposing party's response. *ARA, Inc. v. Barnes Pers, Mgmt., Inc.,* No. 12–2812, 2014 WL 3748633, at *8 n. 9 (D. Minn. July 30, 2014).  The Court has carefully reviewed Sykes' response and the specific excerpts Sykes identifies as violating the Local Rules, and finds no violation of the Local Rules.  Defendants' reply memorandum does not raise any new grounds for relief or present arguments that are unrelated to Sykes's response.  For these reasons, the Court recommends denial of Sykes' Motion for Leave and does not address Defendants' alternative arguments in opposition to the motion.[9]

## V.    RECOMMENDATION

Based on the above, and on the files, records, and proceedings herein, **IT IS RECOMMENDED THAT**:

1. Defendants' Motion to Dismiss (Dkt. 12) be **GRANTED IN PART** as it relates to the claims and allegations against Defendants and **DENIED IN PART** as it relates to Defendants' request for an injunction and sanctions;

2. Plaintiff Joseph Sykes' claims be **DISMISSED WITH PREJUDICE**; and.

3. Plaintiff Joseph Sykes' Motion for Leave to File Surreply (Dkt. 38) be **DENIED**.

DATED: July 15, 2020                    *s/Elizabeth Cowan Wright*
                                        ELIZABETH COWAN WRIGHT
                                        United States Magistrate Judge

---

[9]    Ordinarily, a motion for leave to file a surreply would be treated as a non-dispositive motion for which the undersigned would issue an order rather than a report and recommendation.  Given that the Motion for Leave was filed in connection with a dispositive motion, the Court makes a recommendation rather than issuing an order.

## <u>NOTICE</u>

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under District of Minnesota Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. D. Minn. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in D. Minn. LR 72.2(c).